SPAYD, APPELLANT AND APPELLEE, *v.* TURNER, GRANZOW & HOLLENKAMP ET AL., APPELLEES AND APPELLANTS.

[Cite as Spayd *v.* Turner, Granzow & Hollenkamp (1985), 19 Ohio St. 3d 55.]

(Nos. 84-1028 and 84-1041—Decided August 9, 1985.)

58

*Porter, Wright, Morris & Arthur, John O. Henry* and *Steven R. Smith,* for Robert Spayd.

*Smith & Schnacke Co., L.P.A., Armistead W. Gilliam, Jr.* and *Paul G. Hallinan,* for Turner, Granzow & Hollenkamp et al.

HOLMES, J. In his appeal to this court, plaintiff Spayd contends both lower courts erred in their determination that, due to ethical considerations, there could be no accounting for goodwill upon the dissolution of a

law partnership. Plaintiff further argues that the facts presented herein clearly establish a measurable element of goodwill within the operation of this particular law firm.

At the outset, it is beneficial to set forth a number of general principles emanating from R.C. Chapter 1775, the Uniform Partnership Law, which are applicable to this case in controversy. It is of utmost importance to be reminded that the respective rights of partnership members depend primarily on the specific provisions contained within the partnership contract. This concept is recognized in R.C. 1775.17 wherein the rights and duties of partners in relation to the partnership are specifically set forth "subject to any agreement between them."

Furthermore, all property originally brought into the partnership or subsequently acquired is defined as partnership property. R.C. 1775.07(A). The only property rights vested in a partner are his rights in specific partnership property, his interest in the partnership, and his right to participate in the management. R.C. 1775.23. The partner's interest in the partnership is limited to his share of the profits and surplus. R.C. 1775.25.

The dissolution of a partnership, as distinguished from winding up the business, denotes the change in the relation of the partners caused by any partner's discontinued association with the ongoing business. R.C. 1775.28. Pursuant to R.C. 1775.21, a partner is thereby entitled to a formal accounting concerning partnership affairs, "(A) [i]f he is wrongfully excluded from the partnership business or possession of its property by his partners; (B) [i]f the right exists under the terms of any agreement; [and/or] * * * (D) [w]henever other circumstances render it just and reasonable." See, also, R.C. 1775.42. The statutory law fails to mention "goodwill" in all but one section and that is R.C. 1775.37 which sets forth rights of partners in dissolution. Subsection (B)(3) of that provision specifically provides that a partner who has wrongfully caused a dissolution shall not have goodwill considered in the determination of the value of his partnership interest.

Turning to the case before us, this appeal presents the court with an issue of first impression. We must consider whether, upon the dissolution of a law partnership, a partner is entitled to demonstrate under the remaining portions of R.C. 1775.37 that goodwill is an asset of the partnership in the absence of a provision in the partnership agreement to the contrary. Unique to this issue is the query of whether the rules of ethics within this profession preclude the existence of goodwill in a law partnership. We do not, however, address whether goodwill is a saleable asset in the law practice of a sole practitioner or partnership.

The comprehensive definition of "goodwill" is "the advantage or benefit, which is acquired by an establishment, beyond the mere value of the capital, stock, funds, or property employed therein, in consequence of the general public patronage and encouragement, which it receives from constant or habitual customers, on account of its local position, or common

celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices." Story, Commentaries on the Law of Partnership (6 Ed. 1868) 170, Section 99. See, also, *Metro. Natl. Bank* v. *St. Louis Dispatch Co.* (1893), 149 U.S. 436; 38 American Jurisprudence 2d (1968) 912, Good Will, Section 1. A much narrower definition has been stated as the probability that the old customers will resort to the old place. *Mattis* v. *Lally* (1951), 138 Conn. 51, 54, 82 A. 2d 155, 156.

Generally, a partnership business may build goodwill as an asset, and upon dissolution of the business by one or more of the partners, courts have recognized that measurable goodwill is a proper asset for consideration in an accounting between the partners where its disposition is not otherwise controlled by the partnership agreement, and the dissolution was not occasioned by the wrongful act of the one who sought the accounting. *Menendez* v. *Holt* (1888), 128 U.S. 514; *Rammelsberg* v. *Mitchell* (1875), 29 Ohio St. 22; *Snyder Mfg. Co.* v. *Snyder* (1896), 54 Ohio St. 86.

Traditionally, the prevailing rule relative to professional partnerships was that goodwill did not exist at dissolution as the reputation of the business entity was dependent on the individual skills of each member. See *Lyon* v. *Lyon* (1966), 246 Cal. App. 2d 519, 54 Cal. Rptr. 829; *Cook* v. *Lauten* (1954), 1 Ill. App. 2d 255, 117 N.E. 2d 414; *Rice* v. *Angell* (1889), 73 Tex. 350, 11 S.W. 338; *Jackson* v. *Caldwell* (1966), 18 Utah 2d 81, 415 P. 2d 667; Annotation (1959), 65 A.L.R. 2d 521.

There appears, however, to be a growing trend throughout the country which recognizes that a professional service partnership possesses goodwill. An ever-increasing number of jurisdictions have held that goodwill may lawfully exist in a professional partnership, and the actual existence of this asset in a particular partnership is a question of fact. See *Evans* v. *Gunnip* (1957), 36 Del. Ch. 589, 135 A. 2d 128 (certified public accountants); *Stefanski* v. *Gonnella* (1983), 15 Mass. App. 500, 446 N.E. 2d 734 (accountants); *Durio* v. *Johnson* (1961), 68 N.M. 82, 358 P. 2d 703 (veterinarians); *Smith* v. *Posner* (1975), 85 Misc. 2d 934, 380 N.Y.Supp. 2d 197 (physicians); *Cohen* v. *Biernoff* (1981), 84 App. Div. 2d 802, 444 N.Y.Supp. 2d 152 (accountants); *Berg* v. *Settle* (1967), 70 Wash. 2d 864, 425 P. 2d 635 (radiologists); *Fine* v. *Laband* (1983), 35 Wash. App. 368, 667 P. 2d 101 (physicians). The rationale for many of these cases is that the reputation for skill and learning in a particular profession often creates an intangible but valuable asset by gaining the confidence of clients who will speak well of the business.[2]

---

[2] As stated in 38 American Jurisprudence 2d (1968) 916-917, Good Will, Section 8:

"Good will is an attribute of a business. Therefore, any person, firm, or corporation maintaining a going business that is competitive and offers a commodity or service for sale or use to other persons may acquire and possess good will and insist on its protection.

"Although it has been held that salable good will can exist only in commercial or trade enterprises and that it cannot arise in a professional business depending on the personal skill

As to partnerships formed for the practice of law, courts have historically relied on two theories in holding that goodwill is not a measurable or distributable asset. One, as previously mentioned, the amount of goodwill that exists is attributable to the professional skill and reputation of each member of the partnership; and, two, the existence of ethical prohibitions against distributable goodwill in law partnerships. See *Siddall* v. *Keating* (1959), 8 App. Div. 2d 44, 185 N.Y.Supp. 2d 630, affirmed (1959), 7 N.Y. 2d 846, 196 N.Y.Supp. 2d 986. See, also, *Smith* v. *Posner, supra; Cohen* v. *Biernoff, supra.*

In *Siddall, supra,* which both lower courts apparently relied upon herein, the New York court denied an allowance of goodwill to a retiring partner of a law firm because such asset would have been calculated upon future earnings of the continuing law firm in which the retiring partner would have no active part or responsibility stemming therefrom. Thus, any distribution of a share of goodwill would have been in violation of Canon 34 of the Canons of Professional Ethics, the predecessor of DR 2-107 of the Code of Professional Responsibility. Canon 34 provided, "[n]o division of fees for legal services is proper, except with another lawyer, based upon a division of service or responsibility."

As with other professions, the legal profession has produced some rather dramatic changes in the last two decades since the *Siddall* case. Traditionally, attorneys were more apt to practice as sole practitioners, or within two- or three-person firms. More recently, law firms have grown extensively in size and scope, with firms of over one hundred attorneys not uncommon.[3] Our profession has not only increased in terms of numbers, but other related factors have materially altered its complexion. The use of computers for clerical and administrative tasks has significantly increased, while office managers who are specifically schooled in the field are being

---

of and confidence in a particular person, this view seems traceable to the early, narrow definition of good will. There is authority that good will may also exist in a professional practice or in a business founded on personal skill or reputation. Such a reputation for skill and learning in a particular profession often creates an intangible but valuable property by winning the confidence of the patrons of the professional person, and the courts have adjudicated rights in such cases with no question as to the existence of good will as a property right." (Footnotes omitted.)

A limited number of jurisdictions have confronted this issue relative to whether the goodwill of a professional partnership can be considered as an asset in a domestic proceeding for alimony or child support. The cases which have affirmatively answered this query include: *Rostel* v. *Rostel* (Alaska 1981), 622 P. 2d 429; *Wisner* v. *Wisner* (App. 1981), 129 Ariz. 333, 631 P. 2d 115; *In re Marriage of Nichols* (1979), 43 Colo. App. 383, 606 P. 2d 1314; *Powell* v. *Powell* (1982), 231 Kan. 456, 648 P. 2d 218; *Lord* v. *Lord* (Me. 1983), 454 A. 2d 830; *Stern* v. *Stern* (1975), 66 N.J. 340, 331 A. 2d 257; *Nastrom* v. *Nastrom* (N.D. 1978), 262 N.W. 2d 487; *In re Marriage of Hall* (1984), 103 Wash. 2d 236, 692 P. 2d 175.

[3] See Stewart, The Partners (1983); Heinz & Laumann (1982), Chicago Lawyers: The Social Structure of the Bar; Nelson, Practice and Privilege: Social Change and the Structure of Large Law Firms, 1981 Am. Bar Foundation Res. J. 95.

employed; departmentalization of the larger firm is becoming the norm; branching of the firm within the same community, or beyond the county and state lines, has become the trend; and mergers of law firms are taking place in order to provide a broader service to clients on a more cost-effective basis.

All of these factors evidence the trend of law firms becoming more business-oriented. This trend has been recognized to a certain extent by the American Bar Association within its Model Rules of Professional Conduct (1983)[4] and statutes enacted by the Ohio General Assembly.[5] Therefore, we believe the current status of law firms reasonably suggests that the existence of goodwill in a law partnership should not be precluded as a matter of law.

Based on the foregoing, we hold that where the evidence establishes that a professional partnership, including a law partnership, has generated measurable goodwill, it is not against public policy to include that amount of goodwill as an asset upon dissolution of the business.

A review of the relative ethical standards governing the bar does not mandate a different result. As previously stated, the *Siddall* court based its determination upon Canon 34 of the Canons of Professional Ethics which was the forerunner of DR 2-107.[6] The current rule prohibits the division of a fee for legal services with another lawyer who is not a partner or associate within the law firm, with certain well-defined exceptions. However, subsection (B) of the precept provides that the rule "does not prohibit payment to a former partner or associate pursuant to a separation or retirement agreement."

The underlying philosophy of both the old Canon and the existing Disciplinary Rule is aimed at the impermissive sharing of future fees where there is a lack of services performed, or responsibility to the client. However, this philosophy is unwarranted in relation to goodwill, which does not completely entail future earnings. While future earnings may be considered in the measure of goodwill, the latter, by contrast, is an in-

---

[4] See Rules 5.1 and 5.2 of the Model Rules of Professional Conduct.

[5] Members of a law firm may now incorporate and form a legal professional association. See R.C. 1785.02 *et. seq.*

[6] DR 2-107 states as follows:

"(A) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless:

"(1) The client consents to employment of the other lawyer after a full disclosure that a division of fees will be made.

"(2) The division is made in proportion to the services performed and responsibility assumed by each.

"(3) The total fee of the lawyers does not clearly exceed reasonable compensation for all legal services they rendered the client.

"(B) This Disciplinary Rule does not prohibit payment to a former partner or associate pursuant to a separation or retirement agreement."

tangible asset which the partnership possesses, and is in existence at the time of the dissolution.

We are in agreement with the recent statements made by the Supreme Court of New Jersey on this issue. In *Dugan* v. *Dugan* (1983), 92 N.J. 423, 433, 457 A. 2d 1, 6, the court held:

"* * * Though other elements may contribute to goodwill in the context of a professional service, such as locality and specialization, reputation is at the core. * * * It does not exist at the time professional qualifications and a license to practice are obtained. A good reputation is earned after accomplishment and performance. Field testing is an essential ingredient before goodwill comes into being. Future earning capacity *per se* is not goodwill. However, when that future earning capacity has been enhanced because reputation leads to probable future patronage from existing and potential clients, goodwill may exist and have value. When that occurs the resulting goodwill is property subject to equitable distribution."

Therefore, we conclude that as a matter of law the ethical standard within DR 2-107(B) does not preclude a finding that goodwill exists in a law partnership upon dissolution of that association.

Turning our attention to the specific facts pertaining to this partnership and its members, we find that the partnership was at will, without a specified term or undertaking. The agreement provided that any partner may terminate his interest in the partnership by serving written notice upon the other partners. The trial court correctly found that plaintiff Spayd voluntarily expressed his desire to terminate his relationship with the partnership, and that all of the partners were aware of Spayd's intent to leave the firm. Under such circumstances, the necessity of written notice was clearly waived.

The evidence further shows that plaintiff made an independent determination to leave the firm based upon economic considerations of what he determined to be in his best interests. The actions of the remaining partners in reducing plaintiff's partnership interest and removing his right to bill the Third National Bank did not constitute constructive expulsion. These policy determinations were duly authorized actions made by the management committee pursuant to Section VIII of the partnership agreement.[7] Therefore, the remaining partners did not violate the agree-

---

[7] Concerning the management of the firm, Section VIII provided, in pertinent part:

"The Partners agree that Granzow, Spayd and Hollenkamp shall act as a management committee for the Partners with authority and responsibility as follows:

"The management committee shall, by not less than a majority vote, determine all of the policies of the partnership including the management of its employees, their employment, discharge, compensation and bonuses.

"* * *

"The management committee shall meet annually at least sixty (60) days prior to the end of any fiscal year of the partnership for the purpose of discussing and determining any

ment, and the partnership was not dissolved by them in contravention of such agreement.

From the record, it is evident that the partnership was dissolved through a voluntary departure of one of the partners, a situation provided for within the partnership agreement. Accordingly, plaintiff's partnership rights and interests must be determined by the provisions of the agreement, rather than any statutory enactment under the Uniform Partnership Law.

Pursuant to Section XII, the value of each partner's interest upon dissolution of the partnership is computed upon the basis of cash "equal to the amount of his capital account (contributed capital plus undrawn profits), as shown on the audit report, and shall be entitled to nothing other than said cash." The agreement is certainly expressive as to that amount to be paid to a retiring or terminating partner which represents his interest in the partnership. Significantly, the provision does not provide for payment of goodwill in the partnership. In addition, there was no evidence that the accounting practice within this partnership was to carry goodwill as an asset, nor was there evidence that any previously retiring partner under a similar provision had been paid for goodwill.

A partnership agreement will generally not be disturbed by the courts in the absence of extenuating circumstances. *Blount* v. *Smith* (1967), 12 Ohio St. 2d 41 [41 O.O.2d 250]. Furthermore, we believe the provision of goodwill to a retiring or terminating partner is a matter of contract which must be assented to by all parties involved. We hold, therefore, that the provision for goodwill as an asset of a partnership which is to be distributed upon dissolution of the business is a matter of contract between the partners and must be specifically set forth in the partnership agreement.

Accordingly, we conclude that the judgment of the court of appeals must be reversed and the judgment of the trial court reinstated but for reasons other than set forth in the judgment of the trial court and for the reasons set forth in this opinion.

*Judgment reversed.*

SWEENEY, LOCHER, C. BROWN and WRIGHT, JJ., concur.

CELEBREZZE, C.J., concurs separately.

---

changes to be made for the ensuing fiscal year in the percentage participation of the Partners.

"* * *

"The determinations made by the management committee at any time after notification to the Partners of such determination shall be binding and conclusive upon all of the Partners."

DOUGLAS, J., concurs in judgment only.

CELEBREZZE, C.J., concurring. I concur in the majority's decision to the extent it holds that appellant's rights and interests must be determined by the provisions of the partnership agreement which, in this case, does not allow payment for goodwill to a withdrawing partner. However, I part company with the majority in their *dictum* which allows payment for goodwill "upon dissolution of the business" if agreed to by the contracting law partners.

In my opinion both lower courts correctly held that goodwill is not a distributable asset of a law firm. I recognize that while goodwill is often personal to an attorney, a reputable firm may also have acquired goodwill which is of benefit to a law firm just as it is of value to business partnerships. Cf. *Snyder Mfg. Co.* v. *Snyder* (1896), 54 Ohio St. 86. Appellee "Turner" law partnership appears to be such a law firm. There is evidence of client loyalty to the "Turner firm" and not just to individual partners. See *Dugan* v. *Dugan* (1983), 92 N.J. 423, 433, 457 A. 2d 1, 6, where the Supreme Court of New Jersey, in the context of a divorce proceeding, recognized goodwill as being in the enhancement of future earning capacity, because of reputation, leading to probable future patronage from existing and potential law clients.[8] Additionally, I do not believe the excess earnings discussed by the appellate court as resulting from goodwill are necessarily "excessive fees." Rather, the value of a firm's goodwill is the additional business generated because of the *firm's* ability to attract clients as a result of its name, physical location, or the concomitant reputation of its members.

Although I believe goodwill exists and is therefore ascertainable, I nevertheless agree with the lower courts' determinations that it may not ethically be compensable to a withdrawing partner in Ohio. Although DR 2-107(B) allows for payment to a retiring partner or associate pursuant to a separation agreement, I do not believe it permits a former partner to receive a portion of future services rendered by the firm in settlement of goodwill. See, generally, ABA/BNA Lawyers' Manual on Professional Conduct (1984) 41:703 and 91:801, and the cases cited therein. Rather, I believe this section of the Code of Professional Responsibility was intended to allow a firm to gradually pay off a partner's tangible interest in a firm and to allow for reasonable retirement payments. I find that the policy and ethical concerns of the court in *Siddall* v. *Keating* (1959), 8 App. Div. 2d 44, 185 N.Y. Supp. 2d 630, affirmed (1959), 7 N.Y. 2d 846, 196

---

[8] The majority opinion relies heavily on portions of the Supreme Court of New Jersey's decision in *Dugan, supra,* which recognized goodwill as having value in the dissimilar context of a *divorce proceeding.* However, the majority opinion ignores later portions of the New Jersey decision which clearly reiterated the prevailing view that goodwill can not be sold or protected through a restrictive covenant by a solo practitioner. " '* * * [C]lients are not chattels or merchandise and a lawyer is not a tradesman.' " *Id.* at 437, 457 A. 2d at 8.

N.Y. Supp. 2d 986, are equally valid today. See, *e.g., In re Silverberg* (1980), 75 App. Div. 2d 817, 427 N.Y. Supp. 2d 480, which found that an agreement that provided, *inter alia,* for payment for goodwill, between former partners, was an unethical division of legal fees without regard to services actually rendered and was void as against public policy.

In a strikingly similar case to the one at bar the Supreme Court of Iowa recently recognized that in some cases (such as divorce) the goodwill of a law practice may properly be valued. However, it held that "the transfer or withdrawal of a portion of a law practice * * * is not such a situation." *Bump* v. *Stewart, Wimer & Bump, P.C.* (Iowa 1983), 336 N.W. 2d 731, at 737. I agree with the Iowa court, and the authorities it cites in support of the proposition that "* * * placing a 'price tag on the goodwill of a law practice' is contrary to public policy * * *." *Id.*

Based on the foregoing, I believe today's majority has taken one step forward in contract law and two steps backward in the realms of legal ethics and public policy by expressing approbation of goodwill bargains between attorneys.

