DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the Wood County Court of Common Pleas, Domestic Relations Division, which granted plaintiff-appellee, Annette Gruetter Bunkers, a divorce from defendant-appellant, Jeffrey Bunkers, and addressed the issues of property distribution and child support. Because we find that the trial court did not abuse its discretion, we affirm.
 {¶ 2} Appellant and appellee were married in September 1994, and are the parents of two minor children, Austin (1995) and Grant (1996). During the marriage, appellant worked as an orthodontist in a successful solo practice. Because of appellant's financial success, the parties determined that appellee, who had previously been employed, would stay home to raise the children.
 {¶ 3} On March 23, 2001, appellant filed for divorce. Effective December 1, 2001, appellant was ordered to pay temporary spousal support in the sum of $8,500, and child support totaling $2,980 per month. On September 11, 2002, support was modified to $12,000 per month for spousal support and $1,352.83 per month in child support plus the cost of the children's tuition.
 {¶ 4} On October 6, 2004, following a ten-day trial that spanned several months, the magistrate issued his decision. Regarding the matters at issue, the magistrate adopted appellee's expert's opinion of the valuation of appellant's orthodontic practice setting it at $2,050,000. However, the magistrate concluded that the expert failed to provide a realistic marketability discount; he placed the discount at 50 percent for a total value of $1,025,000. The magistrate determined that a spousal support award was not appropriate based on the marital assets appellee was to receive and the fact that $50,000 income was imputed to her based upon her prior career. With regard to child support, the magistrate ordered that appellant pay $12,760.60, plus costs, per month based upon his $900,000 income. The magistrate set the marital value of the Morgan Stanley account at $103,883.51.
 {¶ 5} Objections to the magistrate's decision were filed by the parties. On September 2, 2005, the trial court ruled on the parties' objections; the court made the following changes to the magistrate's decision. As to the valuation of appellant's orthodontic practice, the court determined that using a weighted average of the earnings of the past five years was more appropriate than appellee's expert's use of the most recent year, 2001, which was adopted by the magistrate; the court also adjusted appellant's income from $201,500 to $325,000. The trial court also disagreed with the magistrate's decision to discount the value of the practice by 50 percent based on lack of marketability; the court determined that the ten percent sum proposed by appellee's expert was appropriate.[1] The court applied a 42.41 percent pre-tax rate of return to the weighted average and concluded that the practice had a value of $1,015,000.
 {¶ 6} With regard to the Morgan Stanley trust account, the court found that as of December 31, 2001, the account had a value of zero; however, during the course of 2001, appellant withdrew $618,153.55 of the funds. The court further found that appellant withdrew $100,000 in October 2000. The court then deemed the marital value of the account to be $718,153.55; the court reasoned that appellant failed to adequately trace the proceeds.
 {¶ 7} The court denied appellant's objection to the magistrate's determination regarding the amount of child support. The court also denied appellee's objection to the magistrate's refusal to award spousal support.
 {¶ 8} On September 22, 2005, appellant filed a motion for clarification/ reconsideration. The chief argument related to the valuation of the Morgan Stanley account. Appellant argued that the withdrawals at issue were used to purchase marital property. On October 11, 2005, the court modified its prior judgment taking half of the $262,409.66 taken from the Morgan Stanley account and invested in JeBunk Properties, Inc., and considered marital property and determining the entirety of JeBunk Properties to be appellant's separate property.
 {¶ 9} A judgment entry of divorce was entered on November 18, 2005. The final judgment entry in this case was journalized on April 6, 2006, and this appeal followed.
 {¶ 10} On appeal, appellant raises the following four assignments of error:
 {¶ 11} "I. The trial court erred by unreasonably and arbitrarily ordering appellant to pay $13,015.71 per month in child support.
 {¶ 12} "II. The trial court erred in valuing appellant's orthodontic practice by including personal goodwill as a marital asset subject to division upon divorce."
 {¶ 13} "III. The trial court erred in adopting a non-competent, non-credible hypothetical fair market value model when valuing appellant's orthodontic practice.
 {¶ 14} "IV. The trial court erred in the assessment of the value of certain marital properties."
 {¶ 15} In his first assignment of error, appellant argues that the trial court abused its discretion when it awarded appellee, as the custodial parent, child support in the sum of $12,760.60, plus costs, for a total of $13,015.71 per month. Appellant asserts that the sum does not adequately reflect the needs and the standard of living of the children. Appellant further argues that the trial court, in calculating child support above the $150,000 maximum as set forth in the R.C.3119.021 support schedule, continued to utilize the 14.65 percent model rather than a "decreased rate as suggested by the statute."
 {¶ 16} Conversely, appellee contends that the magistrate and the trial court carefully considered the evidence presented and the award was not an abuse of discretion. Appellee further opines that although the 2001 statutory amendments removed the requirement that the court extrapolate the applicable percentage of child support at the $150,000 level, the current statute clearly leaves the determination to the trial court's discretion.
 {¶ 17} We first note that absent an abuse of discretion, a child support award will not be disturbed on appeal. Dunbar v. Dunbar (1994),68 Ohio St.3d 369, 371. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1984), 5 Ohio St.3d 217, 219.
 {¶ 18} R.C. 3119.021 provides the guidelines for child support cases where the combined income of the parties is between $6,000 and $150,000. Where the parties' income exceeds this amount, R.C. 3119.04(B) provides:
 {¶ 19} "(B) If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order, or the child support enforcement agency, with respect to an administrative child support order, shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court or agency shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court or agency determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If the court or agency makes such a determination, it shall enter in the journal the figure, determination, and findings."
 {¶ 20} Regarding the application of R.C. 3119.04(B), in Kendall v.Kendall, OT-04-004, 2005-Ohio-1777, this court stated:
 {¶ 21} "`[Nothing in the new version of the statute, however, prohibits the court from using [extrapolation] to determine the amount of support due in high income cases; it merely no longer mandates that the court use this method. Moreover, the statute does not require any explanation of its decision unless it awards less than the amount awarded for combined incomes of $150,000. [A] trial court [does not err] therefore, if it used the extrapolation method to determine the amount of child support due.'" Id., ¶ 25, quoting Cyr v. Cyr, 8th Dist. No. 84255, 2005-Ohio-504, ¶ 56.
 {¶ 22} The trial court's September 2, 2005 judgment adopted the magistrate's findings of fact and conclusions of law regarding child support. In the magistrate's October 6, 2004 decision, he imputed $50,000 of income to appellee and found appellant's income to be approximately $900,000. The magistrate found credible appellee's claim that her monthly expenses totaled over $20,000, excluding the cost for private schooling of the children (approximately $18,000 annually.) The magistrate computed the extrapolated amount to be $129,126, to which he added $24,000 based upon the children's enrollment in private school. In calculating the amount of child support the magistrate further cited the parties' vast disparity in incomes, the financial resources of the parties, and the emotional conditions of the children who are in counseling.
 {¶ 23} Upon review of the relevant statutory and case law and the record before the court, we cannot say that the trial court abused its discretion when it used the extrapolation method to calculate the proper amount of child support. Kendall, supra. We further find that the $24,000 "deviation" from the extrapolated amount was not an abuse of discretion.[2] Appellant's first assignment of error is not well-taken.
 {¶ 24} With regard to appellant's second through fourth assignments of error we note that valuation of marital assets is typically a factual issue that is left to the discretion of the trial court. Berish v.Berish (1982), 69 Ohio St.2d 318, 319; Hacker v. Hacker (1981),5 Ohio App.3d 46, 47. Thus, the court's decision will not be reversed absent a showing of an abuse of that discretion. Blakemore v. Blakemore, 5 Ohio St.3d at 219.
 {¶ 25} Appellant's second assignment of error challenges the trial court's valuation of his orthodontic practice. Appellant contends that the $1,015,000, which was ordered to be divided upon divorce, improperly included the value of appellant's personal goodwill. Appellee contends that appellant's argument fails to recognize that such sales would include a consultation agreement and/or a non-compete agreement where the practice is being sold by a sole practitioner.
 {¶ 26} The parties do agree that the Supreme Court of Ohio has not, in relation to the division of marital assets upon divorce, determined whether personal goodwill[3] is a divisible asset. However, this court, in Barone v. Barone (Sept. 1, 2000), 6th Dist. No. L-98-1328, addressed a similar set of facts.
 {¶ 27} In Barone, the appellant and another physician each owned a 50 percent interest in a cosmetic surgery practice. Citing Spayd v. Turner,Granzow Hollenkamp (1985), 19 Ohio St.3d 55 (Ohio Supreme Court recognized goodwill as an asset in the valuation of a law partnership,)[4] we concluded that the trial court did not err when it adopted appellee's expert's valuation of the business which included professional goodwill. We stated:
 {¶ 28} "[T]he trial court was presented with extensive evidence from each expert witness regarding the valuation of appellant's medical practice. The trial court had before it competent, credible evidence as to possible valuations and was in the best position to determine the credibility of the expert witnesses. The fact that the trial court accepted the valuation set forth by appellee's expert does not automatically render such decision arbitrary or unconscionable. The trial court did not abuse its discretion in failing to adopt the valuation of appellant's medical practice as offered by appellant's expert." Id.
 {¶ 29} Further, in Kahn v. Kahn (1987), 42 Ohio App.3d 61, also cited in Barone, the Second Appellate District thoroughly examined the issue of the valuation of goodwill in the case of a sole family practitioner. In Kahn, the court, citing Spayd, supra, placed a
 {¶ 30} value on the appellant's goodwill[5] and determined that it was subject to equitable division in a divorce proceeding. The court rejected the appellant's argument that goodwill is synonymous with future earnings (because appellee was awarded spousal support) or that by placing a value on goodwill, the court was improperly valuing a medical degree. Id. at 62-64.
 {¶ 31} Regarding the use of goodwill in the valuation process, theKahn court opined:
 {¶ 32} "The problem results from the inability of many commentators to conceptualize the property division process as containing two steps. First, place a value on the property to be able to divide it and, second, distribute the property fairly based on the statutory considerations. In the first step, goodwill is treated as any other asset of the practice in giving the practice a monetary value. In the second step, all income-producing assets are considered, along with all other statutory considerations, to decide which assets should be given to which party." Id. at 64.
 {¶ 33} As in Barone and Kahn, the parties in this case each provided extensive expert testimony regarding the valuation of appellant's practice. The trial court adopted the appellee's expert's fair market value approach but, as proffered by appellant's expert, utilized a five-year weighted average approach as to earnings. Further, the court, unlike Kahn, did not award spousal support. Because the trial court was able to weigh the credibility of the experts and was most familiar with the lengthy history of this case, we cannot say that the court abused its discretion in valuing the appellant's orthodontic practice. Appellant's second assignment of error is not well-taken.
 {¶ 34} In his third assignment of error, appellant contends that the trial court abused its discretion when it adopted the fair market value model set forth by appellee's expert. When determining the value of marital assets, a trial court is not confined to the use of a particular valuation method but can make its own determination as to valuation based on the evidence presented. James v. James (1995),101 Ohio App.3d 668, 681. A trial court's valuation of marital property will not be reversed absent an abuse of discretion. Id.
 {¶ 35} There are several recognized methods for valuing professional goodwill, including: "(1) capitalization of net profits (or straight capitalization); (2) capitalization of excess earnings; (3) the IRS method (known as the "formula" approach), which subtracts a reasonable rate of return on tangible assets and salary from average earnings; (4) market value; and (5) buy-sell agreements." Kell v. Kell, (Dec. 14, 1993), 4th Dist. No. 92CA1931.
 {¶ 36} Appellee's expert, Grover Rutter, set forth the following definition of fair market value:
 {¶ 37} "The price expressed in terms of cash equivalents, at which a property would change hands between a hypothetical willing and able buyer and a hypothetical willing and able seller, acting at arms length in an open and unrestricted market, when neither is under compulsion to buy nor to sell, and when both have reasonable knowledge of the relevant facts."[6]
 {¶ 38} Appellant's expert, Kevin Gilmore,[7] used the capitalization of earnings method. This method values a business based on the future estimated earnings.
 {¶ 39} Reviewing the parties' expert testimony, the trial court adopted Rutter's fair market standard of value. However, the court rejected Rutter's use of only the 2001 earnings (which were also the highest to date.) Instead, the court utilized the five-year weighted average income method advocated by appellant's expert, Kevin Gilmore. In so doing, the court opined: "While the most recent year to the valuation date is the most relevant, including prior years will temper any unusual or extraordinary events that might be present in 2001." In addition, the court raised the amount of salary Rutter proposed from $201,500 to $325,000.
 {¶ 40} Upon review of the extensive evidence before the trial court, we cannot say that the court abused its discretion when it adopted appellant's expert's fair market valuation method. James, supra.
 {¶ 41} Appellant further argues that when valuing appellant's practice, appellee's expert failed to consider and discount the value based upon "real market characteristics" including the specialized nature of an orthodontic practice, the financial constraints regarding a practice of such size and success, and the marked lack of comparable sales.
 {¶ 42} The magistrate's October 6, 2004 decision discounted the value of appellant's business by 50 percent based on lack of marketability. Appellee objected to this finding; the trial court agreed. The court found:
 {¶ 43} "Mr. Gilmore and the magistrate reduced the value of the business because of the perceived lack of a ready, willing, and able buyer. However, the court finds Mr. Rutter's foundation principle to be the appropriate standard and will value the business as if there is a ready, willing, and able buyer. The court construes the concept of an `able' buyer as one with sufficient credit to be able to raise or finance the purchase price and as one with sufficient dental and marketing abilities to continue the business as it is presently being run. The court will not increase the lack of marketability discount above the 10%."
 {¶ 44} Upon review, we conclude that appellant's argument is essentially a rewording of his second assignment of error. Because we determined that the trial court did not err when it included goodwill in valuing appellant's practice, we further find that the court did not abuse its discretion when it limited the discount to ten percent, or potential transaction costs, and rejected the proposed marketability discount which is, under the facts of this case, essentially a discount for goodwill. Appellant's third assignment of error is not well-taken.
 {¶ 45} In appellant's fourth and final assignment of error he argues that the trial court erred in imputing $718,153.55 to the parties' Morgan Stanley trust account for purposes of property distribution where the decline in value of the account was due to the reallocation of funds and market fluctuation. Appellant contends that the true value of the account was $45,862.18. Appellee counters that the withdrawals made by appellant in 2001 and October 2000, were all properly designated by the trial court as marital or separate property and were not "double-counted" for purposes of property distribution. The following, based on the evidence presented below, represents the withdrawals at issue:
 1.) 10/18/2000: $100,000
 2.) 3/9/2001: $100,000
 3.) 3/16/2001: $50,000
 4.) 8/31/2001: $205,743.89
 5.) 10/18/2001: $262,409.66
 Total Withdrawals: $713,153.55
 {¶ 46} Appellant argues that the court erred by imputing the full value of the account for purposes of marital property distribution. The trial court treated the above withdrawals as follows:
 {¶ 47} 1.) The court concluded that appellant could not recall the purpose of the withdrawal thus; $100,000 was deemed marital property.
 {¶ 48} 2.) The court counted the $100,000 as marital property but noted that the funds were used to purchase 1,000 shares of stock in Precision Management Group, Inc. Thus, to avoid "double-counting," the court determined that the Precision stock was appellant's separate property.
 {¶ 49} 3.) The court found this amount ($50,000) to be marital property finding that appellant's assertion that he used the funds to purchase an automobile could not be traced as separate property.
 {¶ 50} 4.) The court found this amount ($205,743.89) to be marital property despite appellant's argument that $100,000 was used to foster investments with American Express.
 {¶ 51} 5.) The court found this amount ($262,409.66) to be marital property by failing to recognize appellant's claim that he used this sum to pay down the mortgage of JeBunk Properties, LLC.
 {¶ 52} Finally, the court rejected appellant's argument that $159,881.71 represented a downward change in the value of the assets.
 {¶ 53} On reconsideration of its September 2, 2005 decision, the trial court, with regard to appellant's contention that $262,409.66 of the Morgan Stanley funds were invested in JeBunk Properties, concluded that appellant was correct. However, rather than adjust the value of the Morgan Stanley account, the court determined that JeBunk Properties would be considered appellant's separate property and an adjustment was made. Finally, rejecting the allegation that the $159,881.71 represented a negative change in the value of the account, the court noted that "a decline in market value is seldom referred to as a total withdrawal."
 {¶ 54} After careful review of the arguments of the parties and the record below, we cannot say that the trial court abused its discretion in valuing the Morgan Stanley trust account. Accordingly, we find that appellant's fourth assignment of error is not well-taken.
 {¶ 55} On consideration whereof, we find that substantial justice was done the parties complaining and the judgment of the Wood County Court of Common Pleas, Domestic Relations Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski P.J., William J. Skow, J. CONCUR.
[1] This sum did not reflect a "marketability discount" per se; rather, it included the costs associated with a hypothetical sale.
[2] According to Kendall, the statutory findings under R.C. 3119.22
required to support a "deviation" do not apply to child support awards under R.C. 3119.04(B). See Cyr, ¶ 57.
[3] Appellant distinguishes between personal goodwill and enterprise goodwill which are components of professional goodwill. As cited by appellant, personal goodwill has been defined as "the goodwill that depends on the continued presence of a particular individual." Yoon v.Yoon (Ind. 1999), 711 N.E.2d 1265, 1268-1269.
[4] In Spayd, the court, quoting the Supreme Court of New Jersey, stated:
"`* * * Though other elements may contribute to goodwill in the context of a professional service, such as locality and specialization, reputation is at the core. * * * It does not exist at the time professional qualifications and a license to practice are obtained. A good reputation is earned after accomplishment and performance. Field testing is an essential ingredient before goodwill comes into being. Future earning capacity per se is not goodwill. However, when that future earning capacity has been enhanced because reputation leads to probable future patronage from existing and potential clients, goodwill may exist and have value. When that occurs the resulting goodwill is property subject to equitable distribution.'" Dugan v. Dugan (N.J. 1983), 457 A.2d 1, 6.
[5] Although the Kahn court does not differentiate between "personal" and "enterprise" goodwill, the fact that Dr. Kahn was a sole practitioner lends itself to the conclusion that his "personal goodwill" was intertwined with the enterprise goodwill.
[6] This definition is from the "Glossary of Terms" complied by the American Institute of CPAs, the American Society of Appraisers, the Canadian Institute of Chartered Business Valuators, the Institute of Business Appraisers, and the National Association of Certified Valuation Analysts.
[7] Appellant also presented the expert testimony of Douglas Vandiford. 12.