JOURNAL ENTRY AND OPINION
This is an appeal and cross-appeal from a divorce decree granted to plaintiff-husband Daniel Gourash and defendant-wife Suzanne Collart. The main issue at trial centered on the disposition of an inheritance the wife received during the course of the marriage. Neither party is happy with the court's decree — both raise issues concerning the division of property, spousal support and attorney fees.
The parties were married in 1985 and used a savings account and a checking account. Husband established the savings account prior to marriage but, after marriage, he converted that account into an asset management account that paid higher interest than a checking account but still permitted the account holder to draw checks from the account. Husband placed wife's name with his on the savings account. The parties used the checking account for day-to-day finances. They funded the checking account with husband's paycheck and bonuses. Wife also worked, but she did not deposit any funds into the checking account.
At the time of marriage, the parties lived in a small rental property. They soon had two children and decided to move to a larger house in the city of Lakewood. In October 1987, wife's father made this possible by loaning the parties $25,000 for the downpayment on a $109,000 house. The parties repaid $5,125 of the loan, but the father twice forgave small amounts of the loan as a Christmas present to the parties. The remainder was forgiven by the father's company shortly after wife's father died in August 1989.
In September 1989, wife's father's estate forwarded to her $118,000 in life insurance proceeds which the parties deposited into the savings account. In September 1990, the father's estate closed, and wife received an additional $165,450. Those funds were also placed in the savings account with the intent that the parties would live on their respective salaries and use the savings account as a cushion in life." Once the parties made the decision to deposit the inheritance monies into the savings account, they stopped making further payments into that account.
That same month, September 1990, the parties placed an offer on a house on Avalon Drive in the city of Rocky River. The seller accepted an offer of $245,000 for the house, with a $145,000 down payment, but the parties made the purchase agreement contingent upon the sale of their house in Lakewood. The parties intended to use the proceeds from the Lakewood house as a downpayment on the Avalon Drive house; however, the Lakewood house did not close in time. As a result, the parties withdrew $150,000 from the savings account for the downpayment, plus $5,000 for closing costs. When the Lakewood house closed ten days later, the parties received net proceeds of $36,692. Wife held title to the Avalon Drive house.
Several months after moving into the Avalon Drive property, a psychiatrist confirmed that wife had bipolar disorder (manic-depressive). The parties began receiving counseling, but their marriage faltered and, after several years, wife left husband in October 1993. Husband remained in the house and became primary caretaker for the children. At the time, husband earned $160,000 yearly as a junior partner in a large Cleveland law firm; wife earned $32,000 yearly as director of communications for a youth organization.
The court awarded the parties a divorce on grounds of incompatibility. The court named husband primary residential parent of the two children and granted him the house, with directions to the wife to execute a deed to him. The court ordered husband to pay wife $171,600 as part of the division of property. The court further ordered husband to pay spousal support of $1,500 per month for three years, and alimony pendentelite in the amount of $22,500. The court also ordered husband to pay $15,000 to wife for her attorney fees, and court costs totaling $5,300.
Husband then filed a Civ.R. 60 (B) motion for relief from judgment concerning the award of alimony pendente lite and the court's decision to include prejudgment interest on the property division. A magistrate heard the matter and issued a decision denying the motion. The court adopted the magistrate's decision and this appeal followed. Additional facts will be brought forth in the opinion.
 I
Before considering wife's assigned errors, we must consider husband's motion to dismiss a number of wife's substantive assignments of error. The divorce decree ordered husband to pay wife $171,600 as part of her division of marital property. Husband claims wife accepted a bank check for the full amount of the property division, and also accepted two promissory notes and one personal check to cover accrued interest on that amount; therefore, under authority of Blodgett v. Blodgett (1990),49 Ohio St.3d 243, this satisfaction of judgment renders any appeal on issues relating to the division of property moot. Wife maintains she did not execute a "satisfaction of judgment" and claims she only accepted the payment so that husband could avoid having liens placed on the Avalon Drive property.
In Blodgett, the court cited to the "well-established principle of law that a satisfaction of judgment renders an appeal from that judgment moot." 49 Ohio St.3d at 245. Contrary to wife's arguments, a party accepting full payment of a judgment is not expressly required to execute a formal "satisfaction of judgment." Blodgett cited to Rauch v. Noble (1959),169 Ohio St. 314, 316, for the proposition that when a "judgment is voluntarily paid and satisfied, such payment puts an end to the controversy, and takes away from the defendant the right to appeal or prosecute error or even to move for vacation of judgment." Id.
There is one reported case that rejects the plain language of Blodgett and holds that an appellee's payment of judgment without more is not sufficient to automatically dismiss an appeal as moot. See Federal Land Bank of Louisville v. Wilcox (1991),74 Ohio App.3d 474. That case has been criticized as being a liberal interpretation of the rule and "may contradict the Supreme Court of Ohio's view on the matter." See Poppa Builders, Inc. v.Campbell (1997), 118 Ohio App.3d 251, 254; Hagood v. Gail
(1995), 105 Ohio App.3d 780, 788.
We agree with those cases that criticize Federal Land Bank ofLouisville. All appeals require concrete issues for resolution. Once a party accepts payment of a judgment prior to appeal those issues are deemed resolved, and no issues remain for resolution on appeal.
Husband submitted proof that he tendered a check for the full amount of wife's award of marital property, as well as promissory notes and a personal check covering interest. Wife does not dispute that she accepted these instruments in full payment or that the court ordered her to transfer the deed, but claims she did so for husband's benefit as a means of avoiding judgment liens and foreclosures against the house.
This argument is somewhat disingenuous as it appears wife might have dragged her feet on transferring the deed to the Avalon Drive house in an attempt to force husband into paying off her share of the marital estate. The record shows wife's attorney sent husband's attorney a letter that first alluded to failed settlement discussions in this court. Wife's attorney then informed husband that wife needed the money from the property division to pay her current debts, and concluded by darkly suggesting that "we may soon see judgment liens and foreclosures against the Avalon Drive property." The tenor of the letter suggests that wife knew judgment liens against the Avalon Drive property would make it impossible for husband to establish a line of credit against the house (the only asset valuable enough to act as collateral for the property division) in order to pay off wife's share of the marital property award. Wife cannot be heard to complain that she accepted her share of the property settlement solely to benefit husband when it appears she forced husband's payment by holding out the possibility that her delay in transferring the deed would make it impossible for husband to obtain any loan on the house.
Wife also argues husband should have sought a stay of execution or posted bond if he did not wish to settle the division of marital property. We fail to see how this argument aids wife. Husband has no complaints about settling this portion of the case — wife is the one insisting she had been reluctant to settle. Had wife wished to preserve her right to challenge aspects of the division of marital property, she should have sought a stay of execution, not husband.
Finally, wife complains husband expressly excepted this appeal from any alleged satisfaction of the court's judgment. She points to Promissory Note II which provided that payment would be due on the earlier of (1) the date the parties settled or (2) the resolution of the appeal by this court.
Nothing in either condition for payment constitutes a right to preserve the appeal. The promissory note merely provides terms for when payment will occur. Condition (1) expressly provides that the parties may settle the matter, at which time the note will become due and payable. We think it obvious from the authorities we previously cited that if the parties were to settle the matter, no further appeal could be taken; therefore, husband could not be said to have intended to pursue his appeal regardless whether he satisfied the judgment or not.
We conclude that wife's acceptance of payment in full of the cash award for division of marital property and interest accruing on that debt constituted a satisfaction of judgment. Accordingly, we grant the motion to dismiss those assignments of error relating to the division of marital property: Assignments of Error 1, 2, 3, 4, and 8.
 II
The fifth assignment of error complains the court's award of spousal support failed in both amount and duration to give due regard to wife's bipolar disorder as being a complete bar to her ability to earn any kind of living approaching the standard she enjoyed while married.
The trial court's authority to award spousal support is found in R.C. 3105.18, which sets forth numerous factors the court must consider when asked to provide spousal support. Kaechele v.Kaechele (1988), 35 Ohio St.3d 93, 95. The court must set forth a factual basis or rationale which supports the award of spousal support. Id., at paragraph two of the syllabus;Moro v. Moro (1990), 68 Ohio App.3d 630, 635. We cannot substitute our judgment for that of the trial court unless we find, under the totality of the circumstances, the trial court abused its discretion. Holcomb V. Holcomb (1989), 44 Ohio St.3d 128, 131.
The court's judgment entry shows the following:
 This is a marriage of relatively short duration, involving a non-homemaker spouse who when physically and mentally fit is capable of earning between Thirty Thousand Dollars ($30,000) and Forty Thousand Dollars ($40,000) per year. However, due to a psychiatric condition, Defendant is currently receiving Ten Thousand Seven Hundred Dollars ($10,700) per year in Social Security disability benefits. The parties maintained a high standard of living during the marriage which included considerable travel, recreation, yacht club memberships, etc. Defendant will not be able to maintain any similar standard of living without an award of spousal support. However, Defendant's needs are moderated somewhat by the fact that she will receive substantial assets from the Court's division of property.
At trial, the court heard considerable testimony relating to wife's bipolar disorder and her past employment history. Wife's psychiatrist told the court that wife's bipolar disorder manifested itself with symptoms of promiscuity, excessive spending and episodes of poor judgment. While still living with husband in 1993, wife tried to commit suicide by drug overdose. The psychiatrist told the court that wife's condition had stabilized considerably (she asserted this fact as part of her effort to retain custody of the children) and that a new medication regimen "has been excellent."
The psychiatrist gave a gloomier picture of how wife's bipolar disorder affected her employment prospects. Wife testified she worked in advertising and public relations, most recently earning about $32,000 annually before being laid off in September 1995. Despite this work history, the psychiatrist believed wife could not expect to make that same amount in the future, saying she "is certainly capable of a lot and certainly capable of working but the kind of job that would reimburse her adequately on a full-time basis is bound to be a stressful type of job, and we know that in her situation, stress is the factor that would tend to destabilize her." The psychiatrist would not say that his opinion held for the rest of wife's life, but did note that her present level of stability "is probably the best that we are going to hope for."
Given this uncontradicted evidence, we conclude the court abused its discretion by awarding spousal support of only $1,500 a month for three years. As the court noted, the parties established a very high standard of living during their eight years of marriage, supported in large part by the inheritances wife received and contributed to the family. The unrebutted evidence showed that wife's bipolar disorder left her unable to handle significant amounts of stress, thus preventing her from holding a job that would pay her comparably to her previous employment.
Under the court's order, wife's combination of spousal support and social security disability payments will yield her just over $28,000 per year for three years. The court recognized that this award would not enable wife to maintain the same standard of living she enjoyed while married, but found her share of the marital property was substantial. "Substantial" is a relative word. Given wife's past standard of living and the likelihood that she will not be able to maintain gainful employment in the near future, we find the court's spousal support order is so inadequate as to be unreasonable and arbitrary. The court's order apparently disregarded the open issue of how soon wife can reenter the workforce and at what salary. Moreover, wife enjoyed liberal visitation and the court's order can be seen as failing to take into consideration wife's monetary needs as a secondary caregiver to the children.
Accordingly, we find that either the amount or the duration of the spousal support award need to be adjusted to reflect more properly wife's standard of living during the marriage and her inability to support herself in the near future. The fifth assignment of error is sustained.
 III
The sixth assignment of error and the fifth cross-assignment of error both complain about the temporary spousal support award. Wife claims the award of $1,500 for fifteen months fails to cover the whole period of time in which she had been separated from husband. Husband complains (1) the court's order assumes the existence of a prior temporary support award when in fact no such order had been made and (2) the support arrearage did not take into account $5,448 dollars in social security benefits wife had wrongfully appropriated from the children and failed to disclose at trial.
Some preliminary facts are necessary. Wife filed a motion for alimony pendente lite in September 1994, one year before she lost her full time employment. The court originally set the motion for a hearing, but later continued the hearing date and agreed to consider the motion at trial. Following trial, the court filed and sent to counsel for both parties a memorandum containing its decision in the matter. The court instructed wife's counsel to draft a journal entry in conformity herewith." That memorandum did not make any mention of temporary support. When wife's counsel submitted a proposed journal entry containing $22,500 for temporary support "arrears," husband objected, noting the court's memorandum did not rule on temporary support. Wife replied that the court heard testimony to show she had not collected any spousal support while the matter pended prior to trial, therefore a temporary spousal support award could be justified. The court adopted wife's proposed journal entry with one modification not relevant to this issue.
 A
R.C. 3105.18 (B) states "* * * During the pendency of any divorce, or legal separation proceeding, the court may award reasonable temporary spousal support to either party." Temporary spousal support need not be based on the factors in R.C. 3105.18
(C), but needs only to be in an amount that is "reasonable." R.C.3105.18 (B); Zeefe v. Zeefe (Jan. 22, 1998), Cuyahoga App. No. 69975, unreported. Reasonable support is the amount which an obligor has the ability to pay and which is sufficient to meet the obligee's present needs. Norton v. Norton (1924), 111 Ohio St. 262.
We think it ironic that wife is complaining about the amount of temporary spousal support when it appears she is the one who determined that amount in the first place. The court's memorandum did not address temporary support and wife took the bold step of inserting it into the proposed draft entry. When defending the amount of temporary spousal support in the face of husband's objections, wife argued, "[s]urely, the disparity in income between the parties, even when the Wife was employed, would require a $1,500 per month spousal support award." Her response to husband's objections made no mention of her dissatisfaction with the duration of the award, probably because she determined that amount herself. Under these circumstances, we cannot say the court acted unreasonably in setting the amount and duration of the award in accordance with what wife suggested. The sixth assignment of error is overruled.
 B
Husband complains as part of his fourth cross-assignment of error that the court erred by approving wife's proposed judgment entries because they made provision for payment of temporary alimony when the court's memorandum decision failed to address that subject at all.
It appears the wife took the liberty of inserting into the proposed judgment entry matters favorable to her that were not addressed by the court's memorandum decision. The court's memorandum decision did not contain any mention of alimony pendente lite, and the record of trial does not demonstrate that the parties made any specific argument on that money at trial.
Inserting language granting herself an additional $10,000 in interest was just one example of wife's casual attitude toward rewriting the judgment entry in her favor.[1] Despite this, the court approved the second proposed draft judgment entry, which incorporated the alimony pendente lite award, thus manifesting its approval of its content. Hence, although the court's memorandum decision to the parties did not include any provision for alimony pendente lite, the judgment entry ultimately filed by the court is controlling. Economy Fire Cas. Co. v. Craft GeneralContr., Inc. (1982), 7 Ohio App.3d 335. We must find the court ultimately approved the judgment entry.
Pursuant to R.C. 3105.18 (B), the trial court has authority to award temporary spousal support "during the pendency of any divorce, or legal separation proceeding." See also Civ.R. 75 (M). In Rahm v. Rahm (1974), 39 Ohio App.2d 74, 78, we held that "temporary alimony pending litigation may be awarded by the trial court any time after a complaint is filed and before judgment on the merits." A purpose of such an award is to preserve the status quo during the proceeding. See Kahn v. Kahn (1987), 42 Ohio App.3d 61,68. There is no set formula under R.C. 3105.18 for how courts are to arrive at an appropriate amount of temporary support. The only explicit limitation in R.C. 3105.18 is that the award must be "reasonable." Courts are given discretion in deciding what is "reasonable" support because that determination is dependent on the unique facts and circumstances of the case.Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 541 N.E.2d 597. Given that there is no set formula for how a court is to arrive at an appropriate amount of spousal support, and that we have already determined that the amount of spousal support was reasonable, we determine that the court's averaging of the parties' incomes was not in error.
The court did not abuse its discretion under the circumstances by ordering husband to pay temporary spousal support. Wife presented evidence to show that she lost her job because of her bipolar disorder and could not obtain any other employment. Even had she been fully employed, it is apparent that she would have suffered a dramatic loss of lifestyle such that the status quo would not have been preserved. We recognize that wife did not pay any child support, but husband clearly had a disproportionate ability to assume primary financial responsibility for the children, even though he assumed primary custodial care as well. The fourth cross-assignment of error is overruled.
 IV
The seventh assignment of error and the sixth cross-assignment of error relate to the court's decision to order husband to pay wife $15,000 toward her attorney fees. Wife argues the court erred by awarding her only $15,000 toward nearly $50,000 in attorney fees because her disability prevents her from obtaining employment. Husband argues that the court erred by forcing him to pay any fees at all since wife received liquid assets of more than $250,000 while he had no liquidity.
R.C. 3105.18 (H) permits the court to award reasonable attorney's fees to either party at any stage of the proceedings if it determines that the other party has the ability to pay the attorney's fees that the court awards." However, attorney fees are "primarily the function of the party who retains the attorney." Farley v. Farley (1994), 97 Ohio App.3d 351, 358
(emphasis omitted). Attorney fees are awarded in divorce proceedings as part of alimony; consequently, the court must contemplate those same factors contained in R.C. 3105.18 (B) that it considers when it makes an alimony award. The overriding consideration is the financial ability of the party against whom the award is made to pay. Swanson v. Swanson (1976), 48 Ohio App.2d 85,95. Our review of attorney fee awards is limited to determining whether (1) the factual considerations upon which the award was based are supported by the manifest weight of the evidence or (2) the domestic relations court abused its discretion. Oatey v. Qatey (1992), 83 Ohio App.3d 251, 263.
The court found wife's attorney fees were reasonable and necessary. However, the court cited to our decision in Farley and stated it was "mindful of recent pronouncements from the Court of Appeals which deem the primary responsibility for attorney fees to lie with the party that incurred them." In view of this precedent, and in light of the "substantial assets" granted to her as her share of marital property, the court held that husband should pay only a portion of wife's attorney fees.
Given these facts, we cannot say the court abused its discretion by awarding $15,000 in attorney fees to wife as additional spousal support. Although wife received liquid assets as part of her division of marital property, the court could reasonably find her inability to obtain gainful employment in the near future required some additional contribution from husband. On the other hand, we agree with the court that each party should bear primary responsibility for their own fees, particularly when the party requesting fees has some ability to pay. Given this posture, the court made a judgment call on the amount of fees, a call it is particularly well-suited to make, having first-hand examined the witnesses and evidence. We simply have no way of finding the court erred, to either side, in determining that attorney fees should be awarded and in what amount. This necessarily means that we cannot find the court abused its discretion. The seventh assignment of error and fifth cross-assignment of error are overruled. The appeal is affirmed in part and reversed in part.
 V
Husband's first and second cross-assignments of error raise issues relating to the court's refusal to grant him relief from the divorce decree. Husband's motion for relief from judgment asked the court to vacate the divorce decree on grounds that (1) wife's counsel inserted into a second draft of the proposed judgment entry a provision requiring husband to pay statutory interest on the home obligation and (2) that wife had concealed from the court and husband over $5,448 she received in Social Security benefits that should have gone to the children. Husband claimed he failed to object to the interest provision of the judgment entry through excusable neglect because the first proposed draft judgment entry did not contain any interest provision and he assumed that he need only read the second draft of the proposed judgment entry for modifications addressing his objections to the first proposed draft, not for new additions. The court referred the motion to a magistrate who decided (1) husband failed to assert grounds under Civ.R. 60 (B) (1) through (5) to support his claim to relief from the interest provision of the judgment entry because he should have read the second proposed draft for substantive additions and (2) that even though the Social Security benefits were assets of the children, husband failed to show that wife converted those funds into her own use. Husband argues he presented proper grounds for the motion and should have been entitled to present evidence in a hearing on that motion.
In order to prevail on a motion for relief from judgment brought pursuant to Civ.R. 60 (B), the movant must demonstrate (1) a meritorious claim or defense, (2) entitlement to relief under one of the grounds stated in Civ.R. 60 (B) (1) through (5), and (3) timeliness of the motion. GTE Automatic Electric, Inc. v.ARC Industries (1976), 47 Ohio St.2d 146, paragraph two of the syllabus; Buckeye Fed. S. L. Assn. V. Gurlinger (1991), 62 Ohio St.3d 312,314. These requirements are independent and in the conjunctive; failure to establish any one of these requirements forecloses relief. Strack v. Felton (1994), 70 Ohio St.3d 172,174. The trial court has discretion to decide whether to grant relief from judgment, and its determination will be reversed only upon a showing that it abused its discretion. Rose Chevrolet,Inc. v. Adams (1988), 36 Ohio St.3d 17, 20-21; Adomeit v.Baltimore (1974), 39 Ohio St.2d 97.
A meritorious defense is demonstrated by the filing of an answer that contains an affirmative defense or facts sufficient to support the claim of a valid defense. Newark Orthopedics, Inc.v. Brock (1994), 92 Ohio App.3d 117, 122. The movant does not need to show he will ultimately prevail on the defense — only that he alleged a defense which, if proved, would constitute a partial or complete defense to the claim alleged. Id.
 A
There is no question that husband filed the motion for relief from judgment in a timely manner as to the prejudgment interest award — the questions are whether he asserted proper grounds for the motion and whether he demonstrated a meritorious defense.[2]
We find husband properly asserted excusable neglect as grounds for relief under Civ.R. 60 (B) (1). Wife's counsel made an unsolicited, substantive addition to the court's memorandum decision that gave her an additional $20,000 in interest on her share of the marital property. The court made no initial ruling for prejudgment interest in its memorandum decision, and nothing in husband's objections to the first draft of the proposed judgment entry would have suggested that wife's counsel take matters into his own hands to do so. Nevertheless, the provision appeared, unnoticed by husband until after the fact. In response to husband's motion for relief from judgment, wife's counsel stated that he took into consideration husband's objections to the first proposed draft judgment entry, meeting those objections in part, and including "specific findings and awards that are supported by the evidence." These points would not have alerted a conscientious attorney to read the entire second draft of the proposed judgment entry for unannounced, substantive additions that expanded the court's own preliminary ruling.[3]
We further find husband asserted a meritorious defense because the court abused its discretion by ordering prejudgment interest on the lump-sum property division amount ordered in this case. Prejudgment interest is permitted pursuant to R.C. 1343.03 on debts that are "due and payable." Under certain circumstances, the court has discretion to order interest on a property award, but those circumstances are not present here.[4] The court filed its nunc pro tunc journal entry on December 20, 1996. In that entry, it ordered husband to pay statutory interest "from the date of valuation (May 20, 1996)." The May 20, 1996 date constituted the date at trial in which husband testified to the current value of the Avalon Drive property. The division of marital property, however, had not been "due and payable" until the court reduced it to judgment on December 20, 1996. See Boesv. Boes (June 17, 1998), Seneca App. No. 13-98-10, unreported;Brannon v. Brannon (June 27, 1997), Trumbull App. No. 96-T-5572, unreported; Downey v. Downey (Aug. 6, 1996), Mercer App. No. 10-95-18, unreported.
Wife maintains the court did not order prejudgment interest under R.C. 1343.03 and merely referred to "statutory interest" as a means of defining the applicable interest rate, not as a basis for interest itself. This argument is untenable. The court's reference to "statutory interest" could only be a reference to R.C. 1343.03, not just to an amount of interest provided by statute.
We therefore find husband asserted all necessary elements of a Civ.R. 60 (B) motion for relief from judgment — he timely asserted excusable neglect for failing to discover that wife's counsel unilaterally inserted language providing for prejudgment interest on the division of marital property and likewise showed a meritorious defense in that the court had no authority to order that interest under the circumstances. Because the court abused its discretion by refusing to grant relief from judgment, we sustain the cross-assignment of error and vacate the interest award on the $171,600 division of marital property.
 B
Husband next argues the court abused its discretion by refusing to grant relief from the divorce decree because wife concealed from the court that she received over $5,448 in Social Security benefits that should have gone to the children.
Husband's motion for relief judgment timely set forth misrepresentation as grounds for the motion under Civ.R. 60 (B) (3), but it failed to set forth a meritorious claim or defense. The magistrate correctly noted that while the Social Security benefits were assets that belonged to the children, there was no evidence to show that wife converted those benefits to her own use. Up to the time of divorce, wife often had possession of the children while husband traveled for business. The court could reasonably find that wife used the Social Security benefits to care for the children, particularly after she lost her employment. Under the circumstances, we cannot say the court abused its discretion. The second cross-assignment of error is overruled.
 VI
For his second cross-assignment of error husband complains the court erred by not permitting him to present evidence at the hearing before the magistrate. Husband claims the magistrate refused to hear evidence because of "a lack of Court time."
The record shows the magistrate ordered that husband's motion for relief from judgment be submitted on briefs, and further ordered the parties to submit stipulations of fact. At no point did husband object to the form of the hearing by claiming the hearing on briefs would prevent him from introducing evidence in support of the motion. Both parties filed hearing briefs, but only wife submitted stipulations of fact. The record also shows husband subpoenaed from the Social Security Administration wife's records relating to payments made to wife on behalf of the children, and wife's stipulations appeared to concede the dollar amount of benefits wife collected as payee for the children.
Husband claimed all along that wife appropriated the childrens' Social Security benefits to her own use as income, and then failed to disclose that income to the court at the time of trial. The question at the motion for relief from judgment concerned the nature of this concealment and whether wife used the childrens' disability benefits as personal income without so informing the court or husband. The magistrate decided that husband failed to show a connection between wife's income and the childrens' disability payments, presumably because the magistrate believed that wife spent those funds in the course of her custodial duties when she had visitation. The court, in approving the magistrate's decision, could find not only that wife did not use the full amount for her own personal benefit, but that the $5,448 wife accepted on behalf of the children did not constitute a sufficient amount of income to justify any modification of the spousal support award. On these facts, we cannot say the court abused its discretion by denying the motion for relief from judgment. The second cross-assignment of error is overruled.
 VII
In his fourth cross-assignment of error, husband complains the court erred by not crediting against wife's income the $5,448 she collected on behalf of the children. We summarily overrule this cross-assignment for the reasons stated in our discussion of the second cross-assignment of error, where we found the court did not abuse its discretion by concluding that husband failed to show wife converted the childrens' benefits for her own use.
Appeal dismissed in part; judgment affirmed in part; reversed in part; vacated in part and remanded.
It is ordered that appellee and appellant share equally the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Court of Common Pleas, Domestic Relations Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, J. CONCURS.
 ANNE L. KILBANE, J. DISSENTS. (See Dissenting Opinion attached.
 _________________________ PRESIDING JUDGE JOHN T. PATTON
[1] We address a similar argument concerning wife's liberties with the judgment entry in husband's first cross-assignment of error relating to wife's unilateral insertion into the proposed judgment entry prejudgment interest on the property division award. controlling. Economy Fire Cas. Co. v. Craft GeneralContr., Inc. (1982), 7 Ohio App.3d 335. We must find the court ultimately approved the judgment entry.
[2] We address husband's cross-assignment of error relating to the court's decision to impose prejudgment interest on the property division because husband, unlike wife, specifically preserved the right to appeal. The courts have held that a party may settle both liability and damage issues but preserve the right to appeal a claim for prejudgment interest. See Wood v.Farmers Ins. of Columbus, Inc. (1995), 106 Ohio App.3d 389. Husband made the promissory note payable on "the date of final determination of interest, if any, which may be due, including appeals taken by Daniel F. Gourash or Suzanne E. Collart, being the Eighth District Court of Appeals Case No. 71882." This language sufficiently demonstrated husband's desire to preserve the prejudgment interest award for appeal.
[3] We previously noted wife took the liberty of inserting into the proposed judgment entry matters favorable to her that were not addressed by the court's memorandum decision. Despite this, the court approved the second proposed draft judgment entry, which incorporated the interest provision, thus manifesting its approval of its content. Hence, although the court's memorandum decision to the parties did not include any provision for prejudgment interest, the judgment entry ultimately filed by the court is controlling. Economy Fire Cas. Co. v. Craft GeneralContr., Inc. (1982), 7 Ohio App.3d 335. By overruling husband's motion for relief from judgment, the court impliedly accepted wife's modification of the memorandum decision.
[4] For example, in Koegel v. Koegel (1982), 69 Ohio St.2d 355, the Supreme Court found a judge did not abuse his discretion by refusing to impose interest on a note payable to a party five years because the note would not become "due and payable" until the occurrence of a future event.