OPINION
Gary L. Neeley ("Gary")[1] is appealing from that part of the divorce decree of the trial court which awarded Phyllis, his former wife and appellee herein, spousal support in the amount of $770 per month for a period of fifteen years. (Final decree, Dec. 4, 1998). Gary's sole assignment of error is that the trial court committed an abuse of discretion in ordering that amount of spousal support. In his brief on appeal, Gary does not question the length of the award, but rather only the monthly amount as being excessive.
The trial court explained its award of spousal support in its judgment entry filed October 28, 1998, as follows:
2. SPOUSAL SUPPORT — The Court has taken into consideration all factors listed in 3108.18(C)(1) [sic,3105.18(C)(1) is the clearly intended reference] and has found the Defendant enjoys significantly higher earnings than the Plaintiff; the Defendant has a retirement account and the Plaintiff does not; this is a marriage of long duration; and the Plaintiff has lost income production capacity as a result of her marital duties. After assessing the above listed criteria, it is found that an award of spousal support is appropriate and reasonable. Therefore, the Court AWARDS the Plaintiff spousal support in the amount of Seven Hundred and Seventy Dollars ($770.00) per month, plus a two percent (2%) processing fee, for a period of fifteen (15) years. Spousal support will terminate upon the death of either party; the remarriage of the Plaintiff; or the cohabitation of the Plaintiff with an unrelated adult male. The Court specifically retains jurisdiction over the issue of spousal support.
Gary attacks the court's finding that he has significantly higher income than Phyllis on the sole ground that it is his belief "that Phyllis does in fact have significant income not reported to the I.R.S. and not reported to the trial court." (Brief, 5). He argues that it is "incredible that Phyllis would remain in this business for 17 years and never make a profit."Id. Gary adds that it is "also incredible that she would not make a profit and still receive various sales awards from her employer." (Tr.6).
At the hearing before the trial court, Phyllis testified that her business is a "Mary Kay type of business" (Tr. 8) and, referring to her tax returns which were filed as evidence, her net profit from her business in 1997 was $5 and in 1996 it was $75. (Tr. 9-10). She further testified that "all I know is what's reported here is correct," (Tr. 11) and she requested $1,000 per month spousal support. (Tr. 17).
Gary, in turn, testified that "she goes to a special tax man and he basically does a lot of Home Interior businesses and he helps these women write this stuff off so that they have no, show very little income at all so that they have to pay very, very little taxes at all. I mean this guy, he specializes in this." (Tr. 35-36).
On cross-examination, the following exchange occurred between Phyllis' attorney and Gary on the witness stand:
 Q. Now, you've indicated that Phyllis goes to an accountant that is able to more or less manipulate the return so that she doesn't have any taxes to pay?
 A. Yes. His name is Tom Tiernan out in Englewood, Ohio.
 Q. I'd like you to look at Plaintiff's Exhibit 2 and 3 on the Schedule C and both of those returns which would be her tax return for her or the schedule for her Home Interior business. Okay. Now, you're looking at Exhibit 2, is that correct?
A. I'm looking at the one for 1997.
Q. All right.
A. Schedule C.
 Q. You want to tell us which one of those expenses is not a legitimate expense on there?
 A. I don't know because he manipulates the figures.
 Q. Do you want to look at Exhibit 3 which is the 1996 return and look at the Schedule C in that and tell us which one of the expenses is not a legitimate expense on that schedule?
 A. Like I say, I don't know, Mr. Orlins, because the tax man knows how to manipulate the numbers. He's good at it and that's what he specializes in so I would not know how to tell you any other thing than what he does.
MR. ORLINS: I don't have any other questions.
We have studied the tax returns submitted into evidence before the trial court and find that the testimony of Phyllis is accurate insofar as her taxable income from her home interior business is concerned. These tax returns were joint returns and were, therefore, signed by Gary as well as by Phyllis. Gary is making a very foolish and, for himself, dangerous argument here. If he could actually prove tax fraud of Phyllis' actual income from her side business, then he would be jointly liable with her in a criminal charge from the internal revenue service. Fortunately for both parties, however, there is not a shred of evidence in the record that would support Gary's accusations about Phyllis' receiving unreported income.
Although a trial court`s discretion in establishing a spousal support award is not unlimited, it is certainly very broad. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131. It is settled law that an appellate court may not overturn the decision of the trial court regarding spousal support unless it can find that the decision is unreasonable, arbitrary, or unconscionable. See, e.g., Kahn v. Kahn (1987), 42 Ohio App.3d 61. Since all the evidence presented in the record and cited by the trial court supports its spousal support decision, we cannot find this decision to be an abuse of discretion. Parenthetically, we note that the trial court awarded Phyllis substantially less than she requested, and furthermore, the trial court reserved jurisdiction over spousal support so that Gary might, in the future, reopen the issue if he can bring forth any actual evidence to support whatever claim he may make at that time.
The assignment of error is overruled, and the judgment is affirmed.
GRADY, P.J. and WOLFF, J., concur.
Copies mailed to:
David A. Orlins
John H. Rion
Hon. Judson L. Shattuck, Jr.
[1] For the sake of clarity, we will refer to both parties by their first names.