This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
On February 9, 2000, the Medina court of Common Pleas granted Rodney Poulton ("Rodney") a divorce from Judy Poulton ("Judy"). Both Rodney and Judy appeal from the trial court's decision. We affirm.
 I.
On December 2, 1998, Rodney filed a complaint for divorce from Judy. Both parties sought to remain in the marital home as the residential parent of their four minor children: Amanda, born August 10, 1983; Trevor, born January 11, 1989; Cory, born June 6, 1990 and Joshua, born July 1, 1992. After an incident involving the police, a permanent order removed Judy from the marital home on August 5, 1999. The magistrate interviewed all four children and released his decision on September 16, 1999.
Both parties objected to the magistrate's decision. On December 14, 1999, the trial court had "reservations about the parenting ability of both parties." However, the trial court designated Judy the residential parent of the four children and awarded her the marital home. The court ordered Rodney to pay child support in the amount of $281.29 per month for each child and spousal support in the amount of $800 per month for the first 24 months and $1000 per month for the next 48 months.[1] The court also modified the magistrate's decision regarding the division of marital and separate property.
Both parties timely appealed to this Court. Rodney raises seven assignments of error and Judy raises two assignments of error.
 II. Rodney's First Assignment of Error: THE MAGISTRATE ERRED BY DESIGNATING APPELLEE AS THE RESIDENTIAL PARENT AND LEGAL CUSTODIAN OF THE MINOR CHILDREN WHILE TESTIMONY SHOWED THAT APPELLEE IS REPEATEDLY VERBALLY ABUSIVE TO THE MINOR CHILDREN, HAS BEEN PHYSICALLY ABUSIVE TO ONE CHILD, HAS SERIOUSLY NEGLECTED PROVIDING SUPERVISION, AND THAT APPELLEE HAS A VOLATILE TEMPERAMENT.
 Rodney's Second Assignment of Error: THE MAGISTRATE ERRED BY CONDUCTING A SECOND IN CAMERA INTERVIEW OF THE MINOR CHILD AMANDA FOR THE REASON THAT A TUMULTUOUS EVENT HAD JUST OCCURRED IN THE PARTIES' LIVES.
In his first two assignments of error Rodney challenges the trial court's determination that Judy will be the residential parent of the children.
A trial court is vested with broad discretion in child custody matters and may only be reversed upon a showing of abuse of discretion. Davis v.Flickinger (1997), 77 Ohio St.3d 415, 416-417; Pater v. Pater (1992),63 Ohio St.3d 393, 396. The term "abuse of discretion" implies that the trial court's decision is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. The appellate court's role is to ascertain whether the award of custody is supported by a substantial amount of credible and competent evidence. Davis,77 Ohio St.3d at 418. An appellate court must be mindful that the trial court is better equipped to examine and weigh the evidence and make decisions concerning custody. Miller v. Miller (1988), 37 Ohio St.3d 71, 74.
Rodney contends that the trial court failed to consider the best interests of the children in its decision to designate Judy the residential parent. R.C. 3109.04(F)(1) provides that in determining the best interest of a child, the court shall consider the following factors:
(a) The wishes of the child's parents regarding his care;
 (b) If the court has interviewed the child in chambers * * * regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
(d) The child's adjustment to his home, school, and community;
 (e) The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate companionship rights approved by the court;
 (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 (h) Whether either parent has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused or neglected child * * *; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in the child being an abused or a neglected child;
 (i) Whether the residential parent * * * has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court;
 (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.
The magistrate's decision indicates that the factors listed in R.C.3109.04(F)(1) were considered, including the wishes and concerns expressed by all minor children during in camera interviews. The magistrate interviewed all four children on July 19, 1999. At that time the two youngest children, Cory and Joshua, wanted to live with their mom; Trevor wanted to remain in the marital home with either parent and Amanda wanted to live with her dad in the marital home. At Judy's request, the magistrate conducted a second in camera interview with Amanda on September 2, 1999. At the second interview, Amanda stated her primary concern was to remain in the marital home. She did not express a preference for living with either parent but stated that she was concerned about the lack of contact she had with her mom.
The magistrate discussed the evidence presented at the hearing and concluded that Judy should be named the residential parent of the children. The trial court considered Rodney's objections to the magistrate's decision and found the magistrate's decision was supported by the evidence.
On appeal, each party argues factors which weigh against naming the other party as the children's residential parent. After reviewing the record, we find the evidence indicates that neither party has been an exemplary parent. Judy has been the primary care giver; however, she often uses vulgarities when communicating with the children. Rodney claims Judy was physically violent with the children and on one occasion found Judy with a chokehold on Amanda because of poor grades. On July 26, 1999, Judy was arrested on a domestic violence charge and removed from the marital home.
Rodney also has his share of shortcomings. He has been minimally involved in his children's education until recently. He is wholly unsupportive of Amanda's emotional health problems and discourages her from taking her prescribed medicine. There have been instances where Rodney has not been cooperative with visitation and has improperly involved Amanda in discussions which should have remained between the adults involved.
The trial court considered all of the information presented at the hearings and concluded that the magistrate's decision to designate Judy as the residential parent was supported by the evidence. We do not find this decision to be arbitrary, unreasonable or unconscionable. The evidence indicates that the magistrate and the trial court considered the factors listed in R.C. 3109.04(F)(1) to determine which parent should be named as the children's residential parent. While there is a multitude of evidence as to each parent's shortcomings, there is competent, credible evidence to support the trial court's decision to designate Judy as the residential parent.
Rodney's first and second assignments of error are overruled.
 III. Rodney's Third Assignment of Error: THE MAGISTRATE ERRED BY AWARDING APPELLEE THE MARITAL RESIDENCE EVEN THOUGH APPELLEE CANNOT AFFORD TO MAINTAIN OR REFINANCE THE MARITAL RESIDENCE AND THE SAME SHOULD BE AWARDED TO APPELLANT.
 Rodney's Fourth Assignment of Error: THE COURT ERRED BY GRANTING THE APPELLEE AN UNREASONABLY LONG TIME PERIOD WITHIN WHICH TO PAY TO APPELLANT HIS INTEREST IN THE MARITAL ESTATE WITHOUT ACCOUNTING FOR ANY INTEREST PAYMENTS TO APPELLANT FOR THE WITHHOLDING OF HIS FUNDS.
 Judy's First Assignment of Error: THE TRIAL COURT ERRED BY AWARDING THE APPELLANT SEVEN PERCENT (7%) INTEREST ON HIS PROPERTY INTEREST WHICH IS NOT PAYABLE UNTIL A FUTURE DATE.
All three of these assignments of error deal with the trial court's finding that Judy shall receive the marital home and that Rodney shall receive a mortgage plus 7% interest on the marital home that he can collect after the youngest child graduates or leaves high school. Having previously found that the trial court did not err in designating Judy the residential parent we find that it was in the children's best interests to remain in the marital home. Judy is employed outside of the home and will receive child and spousal support. Therefore the trial court did not err in its decision that Judy be given the marital home.
In the present case, the trial court modified the magistrate's decision eliminating a period of time that the mortgage would be interest free, thereby awarding Rodney a mortgage in the amount of $10,718.44[2] plus interest at the rate of 7% per annum. The couple's youngest child is 9 years old. Accordingly, it could be approximately ten years until the mortgage is due.
Rodney argues that the time period defined by his youngest child graduating or leaving high school is an unreasonable amount of time to wait for payment on the mortgage. Judy argues that the award of interest will create an economic hardship. She asserts that the thousands of dollars that she will eventually owe in interest will create an imbalance in the equities of the parties.
The decision whether to award interest upon obligations arising out of the division of marital property is within the discretion of the trial court. Koegel v. Koegel (1982), 69 Ohio St.2d 355, syllabus. We find the trial court was free to assign an interest rate it believed was equitable under the circumstances. Id. at 357.
In the case sub judice, we find no abuse of discretion. The trial court awarded Rodney a $10,718.44 mortgage with 7% annual interest. Although Rodney wishes that the trial court had awarded payment due on an earlier date, the trial court's decision is not unreasonable, arbitrary, or unconscionable. Based upon the foregoing reasons, we overrule Rodney's third and fourth assignments of error and Judy's first assignment of error.
 IV. Rodney's Fifth Assignment of Error: THE COURT ERRED BY AWARDING TO APPELLEE AN UNREASONABLY HIGH AWARD OF SPOUSAL SUPPORT AND FOR AN UNREASONABLE AMOUNT OF TIME.
 Judy's Second Assignment of Error: THE TRIAL COURT ABUSED ITS DISCRETION IN DETERMINING JUDY POULTON'S MONETARY AWARD OF SPOUSAL SUPPORT.
Both parties challenge the trial court's award of spousal support. The trial court ordered Rodney to pay spousal support in the amount of $800 per month for the first 24 months and $1000 per month for the next 48 months. This trial court modified the magistrate's decision ordering Rodney to pay spousal support in the amount of $1050 per month for the first 24 months and $1200 per month for the next 48 months. In his brief on appeal, Rodney does not question the length of the award, but rather only the monthly amount as being excessive. Judy argues that the modified amount of spousal support is not sufficient.
The parties stipulated that Rodney is employed with GTE, earns $19.75 per hour and works 400 to 500 hours of overtime annually.[3] Judy is employed at the Medina Gazette and works approximately 34 hours a week earning $7.00 per hour. After reviewing the record we find that the trial court took into consideration the factors listed in R.C. 3105.18(C)(1): Rodney enjoys significantly higher earnings than Judy, he has a retirement account and the Judy does not; this is a marriage of long duration and Judy has lost income production capacity as a result of her marital duties.
Although a trial court's discretion in establishing a spousal support award is not unlimited, it is certainly very broad. Mittendorf v.Mittendorf (1998), 82 Ohio St.3d 397, 401. It is well-settled law that an appellate court may not overturn the decision of the trial court regarding spousal support unless it can find that the decision is unreasonable, arbitrary, or unconscionable. See, e.g., Kahn v. Kahn (1987),42 Ohio App.3d 61 . Since all the evidence presented in the record and cited by the trial court supports its spousal support decision, we cannot find this decision to be an abuse of discretion.
Rodney's fifth assignment of error and Judy's first assignment of error are overruled.
 V. Rodney's Sixth Assignment of Error: THE MAGISTRATE ERRED BY FAILING TO ACCURATELY CALCULATE THE SEPARATE PORTION OF APPELLANT'S PRE-MARITAL INTEREST IN THE MARITAL RESIDENCE FOR THE REASON THAT THE MAGISTRATE INACCURATELY REDUCED APPELLANT'S MONETARY INTEREST AT THE TIME OF THE PURCHASE OF THE SECOND MARITAL RESIDENCE.
 Rodney's Seventh Assignment of Error: THE COURT ERRED BY AWARDING THE APPELLEE A ONE-HALF INTEREST IN THE BALANCE OF THE FUNDS IN THE EASTERN CREDIT UNION ACCOUNT FOR THE REASON THAT THE FUNDS IN THIS ACCOUNT WERE THE SEPARATE PROPERTY OF THE APPELLANT, AS A RESULT OF THE SETTLEMENT OF A PERSONAL INJURY CLAIM.
In these two assignments of error, Rodney argues that the proceeds from a personal injury settlement in the amount of $10,700 and a portion of the down payment on the couple's second marital home in the amount of $15,790 were his separate property. He asserts that the trial court erred in its determination that these two items were marital property. We disagree.
We begin by noting that before the trial court reaches the stage of distributing property, it must first determine what constitutes marital property and what constitutes separate property. R.C. 3105.171(B). This characterization is a factual inquiry and is reviewed under a manifest weight of the evidence standard. We must affirm the trial court's valuation decisions unless those decisions are not supported by competent, credible evidence. Toth v. Toth (Jan. 24, 2001), Summit App. No. 19997, unreported, at 3-4.
 A. Proceeds from Personal Injury Settlement
At the hearing, Rodney testified that he had been in a car accident in either 1996 or 1997. He was travelling by himself when the accident occurred. Rodney settled a personal injury lawsuit for $20,000. After paying his medical bills he received $10,700. Rodney did not present any documentation of the personal injury lawsuit or documentation of the proceeds from its settlement. He testified that he deposited $8,000 into his credit union account and the remaining $2,700 was "tucked away." On cross-examination he revealed that the $2,700 was tucked away in his wallet.
Judy testified that she had been to an attorney's office in Cleveland, allegedly the same firm that handled Rodney's personal injury lawsuit. She recalled signing a form but could not remember any further details. Judy also testified that the money in Rodney's credit union account was a combination of funds including weekly deductions from his paychecks.
Rodney did not present any evidence beyond his testimony to support his allegations that the money in question was in fact his separate property. Judy testified as to other possible sources for the money. We agree with the trial court's decision that the $10,700 was marital property.
 B. Investment in the First and Second Marital Homes
Rodney presented documentary evidence and testified that he had sold his personal stock in GTE to raise $12,255.81. This amount was used as a down payment on the couple's first marital home. The magistrate found that this represented 20.4% of the initial purchase price of their first marital home. The couple eventually sold this house in 1996. The proceeds from the sale of their first marital home was $45,650.71. Rodney's separate investment of $12,255.81 had appreciated to $15,790.50. The marital interest in the proceeds was $29,860.21.
The couple purchased their second marital home and made a down payment in the amount of $29,500. The magistrate found that Rodney was entitled to $10,325 of the down payment of the second marital home. Rodney asserts that he is entitled to the entire $15,790.50. Neither party presented documentation that indicated what money was used in the down payment on their second home. Rodney asserts that his entire $15,790.50 was used in the down payment. However, on cross examination he testified "that fifteen [thousand] went to pay off debts that was incurred during the marriage."
The magistrate determined that Rodney's separate investment was 35% of the total proceeds of the couple's first house. Therefore he was entitled to 35% of the initial down payment on the couple's second house. We find that Rodney failed to show that $15,790.50 of the initial down payment on the couple's second home was separate property. Accordingly, the trial court did not err in determining that only $10,325 was Rodney's separate property.
Rodney's sixth and seventh assignments of error are overruled.
 VI.
Having overruled all seven of Rodney's assignments of error and Judy's two assignments of error we affirm the judgment of the trial court.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant/Cross-Appellee.
Exceptions.
 ___________________________ WILLIAM R. BAIRD
CARR, J., WHITMORE, J., CONCUR
[1] The trial court modified the magistrate's decision that Rodney would pay spousal support in the amount of $1050 per month for the first 24 months and $1200 per month for the next 48 months.
[2] The actual mortgage of the marital home, $13,418.44 was reduced by $2,700, representing an amount of money that the trial court determined was marital property, modifying the magistrate's determination it was separate property.
[3] Rodney did not provide an annual income for 1999, however he did provide financial information for the past six years earnings: $59,946 in 1998; $48,038 in 1997; $55, 015 in 1996; $52,236 in 1995; $42,321 in 1994 and $42,612 in 1993.