This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant-appellant, John Bakota ("John"), appeals the decision of the Summit County Court of Common Pleas granting plaintiff-appellee, Lori Bakota ("Lori"), a divorce from John. This Court affirms.
 I.
After twenty-four years of marriage, Lori filed for divorce from John on June 7, 1999. The parties agreed to a stipulated division of the marital assets and property except for the division of retirement benefits and spousal support. At the divorce hearing, both parties testified and presented expert witnesses on the issue of valuing Lori's State Teachers Retirement System ("STRS") pension.
The trial court found that the experts presented two very different valuations of Lori's STRS. Lori's expert appraised the asset at $187,772 less a Social Security offset of $56,213 ($131,559) and John's expert appraised the asset at $332,382 less a Social Security offset of $36,742 ($295,640). The experts testified that they had used different assumptions to arrive at their individual appraisals.
The trial court divided Lori's STRS pension by awarding John 41% of the future benefit of her pension when it matures.[1] The trial court ordered Lori to protect John's interest in the STRS pension with a life insurance policy in the amount of $75,000. The trial court retained jurisdiction to interpret, modify, amend or enforce the division of Lori's STRS pension benefits and insurance order. Additionally, the trial court ordered John to pay Lori spousal support in the amount of $100 per month.
This appeal followed.
 II.
FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN FAILING TO ASCERTAIN THE PRESENT VALUE OF MRS. BAKOTA'S [STRS] PENSION AND OTHER [STRS] RETIREMENT BENEFITS IN ORDER TO DETERMINE WHETHER IT WAS POSSIBLE TO DISENTANGLE THE PARTIES BY OFFSETTING THEIR RETIREMENT ASSETS.
 SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN DIVIDING RETIREMENT ASSETS IN A MANNER WHICH LEFT THE PARTIES ENTANGLED, WHEN THERE WERE SUBSTANTIAL AND SIGNIFICANT MARITAL RETIREMENT BENEFITS WHICH WOULD PERMIT EACH PARTY TO HAVE SEPARATE ASSETS.
 In his first and second assignments of error, John argues that the trial court abused its discretion by failing to determine the present day value of Lori's STRS pension in its division of the marital property and by failing to disentangle the parties. This Court disagrees.
In reviewing the equity of a division of property in domestic relation matters, an appellate court is bound to follow the trial court's decision absent a showing that an abuse of discretion occurred. Martin v. Martin
(1985), 18 Ohio St.3d 292, 295. Abuse of discretion constitutes "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
Pension benefits accumulated during the marriage are assets subject to property division in a divorce action. Erb v. Erb (1996), 75 Ohio St.3d 18,20, citing Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 132. However, government retirement systems, such as the STRS, are not subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), codified primarily at Sections 1101 et seq., Title 29, U.S. Code, and R.C.3307.01-3307.12. The terms and conditions of the STRS do not recognize a qualified domestic relations order ("QDRO")[2] to divide the retirement fund.[3] See Sections 1002(32) and 1003(b)(1), Title 29, U.S.Code; Sprankle v. Sprankle (1993), 87 Ohio App.3d 129, 133. As such, a trial court's options in dividing unvested or unmatured public pension benefits are limited.
It is well settled that trial courts in divorce matters should strive to disentangle the parties' economic partnership whenever circumstances permit. Hoyt, 53 Ohio St.3d at 182. When dealing with unmatured benefits which are not subject to a QDRO, the only means to disentangle the parties financially is 1) to order a distributive award from current income or separate property, or 2) to offset the pension benefits with other marital assets.
In the present case, the trial court did not determine a present day valuation of Lori's STRS pension. At the divorce hearing, the experts were unable to agree on a valuation. Lori's expert stated the value at $131,559 and John's expert stated the value at $295,640. Given the disparity of these two figures, the trial court could not determine an accurate valuation of her pension. Without a present day valuation of Lori's STRS pension the trial court was unable to disentangle the parties.
While the experts did not agree on a valuation of the pension, the experts did agree that 41% was the proper factor to represent John's share of the ultimate retirement figure. The trial court awarded John 41% of the future benefit from Lori's STRS pension, directly from the fund, when the pension matures.
This Court finds that the trial court's means of division was reasonable and equitable and does not demonstrate an abuse of discretion. While this alternative will not disentangle the parties financially and will require continued jurisdiction by the trial court, it is an acceptable alternative that falls within the guidelines established by the Supreme Court of Ohio. See Hoyt, 53 Ohio St.3d at second paragraph of the syllabus (holding that a trial court "should attempt to disentangle the parties economic partnership.")
John's first and second assignments of error are overruled.
 III. THIRD ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN REQUIRING MRS. BAKOTA TO MAINTAIN ONLY $75,000 IN LIFE INSURANCE WHEN BOTH EXPERTS TESTIFIED THAT, TO PROTECT MR. BAKOTA'S INTEREST IN HER S.T.R.S. PENSION, MRS. BAKOTA WOULD NEED TO OBTAIN LIFE INSURANCE AND ASSIGN CASH SURRENDER VALUE OF APPROXIMATELY $161,000.
 In his third assignment of error, John argues that the $75,000 insurance policy does not adequately insure his share of Lori's STRS retirement benefits. John contends that should Lori die before she begins to draw her pension from STRS, his proportionate interest would not be adequately protected. This Court disagrees.
As stated above, an appellate court reviews the equity of a division of property in domestic relation matters under an abuse of discretion standard. Martin, 18 Ohio St.3d at 295; Blakemore, 5 Ohio St.3d at 219.
In the present case, the trial court ordered Lori to secure John's present interest in her STRS pension with life insurance in the amount of $75,000. The trial court retained jurisdiction over the matter and stated that 1) the order could be modified to secure John's increased equity interest and 2) that:
 [i]n the event there is insufficient life insurance to cover Husband's equity interest, Husband shall have a lien upon Wife's probate or non-probate assets including, but not limited to, Wife's life insurance and STRS pension benefits.
 At the hearing, Lori testified that she had undergone treatment twice for breast cancer and that her cancer had been in remission for 2 1/2 years. There was also evidence presented that given Lori's medical history, the cost of a large life insurance policy would be prohibitively expensive.
After a careful review of the record, this Court cannot say that the trial court abused its discretion in its insurance order. The trial court required Lori to secure John's interest in her STRS pension with a life insurance policy and retained jurisdiction over the insurance order, allowing future modifications. Accordingly, John's third assignment of error is overruled.
 IV. FOURTH ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN ORDERING MR. BAKOTA TO PAY SPOUSAL SUPPORT.
 In his fourth assignment of error, John argues the trial court erred in ordering him to pay $100 a month in spousal support. This Court disagrees.
An appellate court will not overturn a spousal support award unless the award is unreasonable, arbitrary, or unconscionable. Kahn v. Kahn
(1987), 42 Ohio App.3d 61, 66. An appellate court must presume that the findings of the lower court are correct. In re Jane Doe 1 (1991),57 Ohio St.3d 135, 138. The burden is on the party challenging the award to show that the award is unreasonable, arbitrary, or unconscionable in order for this Court to overturn the award. Shuler v. Shuler (Oct. 27, 1999), Lorain App. No. 98CA007093, unreported.
The factors that a court must consider in determining an award of spousal support are set forth in R.C. 3105.18(C)(1):
 In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
(a) The income of the parties * * *;
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
 This Court has previously held that need is not a basis for an award of spousal support, "[t]he only relevant question is what is `appropriate and reasonable' under the circumstances," and that "once the fourteen factors [under R.C. 3105.18(C)(1)] have been considered, the amount of spousal support is within the sound discretion of the trial court." Bowen v. Bowen (1991), 132 Ohio App.3d 616, 626.
The trial court relied on the statutory factors in making its spousal support award. Specifically the court found that: 1) John had a greater income than Lori; 2) John had a better earning ability than Lori; 3) both parties had significant health problems; 4) the parties marriage was of long duration; 5) Lori had a Bachelor's Degree in Education and John had a Master's Degree in Engineering; 6) both parties began their careers early in the marriage and did not lose income production capacity as a result of the marriage; and 7) the parties retirement benefits were equally divided but future growth of the benefits would be a factor in future modification of spousal support.
The trial court's decision indicates that it took into account the factors to be considered as mandated by R.C. 3105.18. The record does not reveal that the trial court abused its discretion in awarding Lori spousal support. Accordingly, John's fourth assignment of error is overruled.
 V.
Having overruled all four assignments of error this Court affirms the judgment of the trial court.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
Exceptions.
______________________________________ DONNA J. CARR
BAIRD, P.J., WHITMORE, J. CONCUR.
[1] According to the trial court's order, John would receive 41% of Lori's benefits multiplied by a coverture formula: "months of Wife's participation in the plan earned during the marriage divided by Wife's total months of participation in the plan when she takes her benefits."
[2] The Ohio Supreme Court explained in Hoyt v. Hoyt (1990),53 Ohio St.3d 177, that:
 A QDRO is a qualified domestic relations order "which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan * * *." Employee Retirement Income Security Act of 1974 ("ERISA"), Section 206(d)(3)(B)(i)(I) and Section 414(p)(1)(A)(i), Title 26, U.S.Code. Under the Retirement Equity Act of 1984 ("REA"), the QDRO allows the transfer of retirement benefits to an alternate payee (generally the former spouse) without triggering the anti- assignment or alienation provision of a retirement plan.
Id. at 179-180.
[3] Effective January 1, 2002, public retirement programs including STRS will be subject to QDRO. See R.C. 3105.81 and 3307.371. However, this does not affect the outcome of this matter.